# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00105-CR

**Darrell Wayne Parker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 70975, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

A jury found appellant Darrell Wayne Parker guilty of capital murder and assessed a sentence of life in prison without parole. Tex. Penal Code § 19.03. Parker admitted before and at trial that he shot and killed his mother and stepfather, Cathy and Charles Youngblood, but asserts that there was some evidence that showed he did not intentionally or knowingly kill his mother. He contends that the trial court erred by failing to instruct the jury on the lesser-included offenses of manslaughter for the death of his mother and murder for the death of his stepfather. We will affirm the judgment.

## BACKGROUND

Parker testified that he had a history of discord with his stepfather, Charles Youngblood, from Parker's childhood through age forty-two when Parker moved in with the Youngbloods. On the morning of the shootings, Mr. Youngblood had taken Mrs. Youngblood

for a checkup following cancer surgery. Parker testified that, on their return, he helped his mother into the house. As Mrs. Youngblood leaned against a wall in a hallway, Mr. Youngblood chastised Parker for failing to complete a chore. Parker testified that, after Mr. Youngblood physically confronted him in the hall, Parker got a gun from his room and fired it repeatedly. One shot hit Mr. Youngblood in the eye and three shots—any one of which was fatal—hit Mrs. Youngblood in the head.

Parker was charged with capital murder for killing both his stepfather and his mother, and he requested a jury charge on the lesser-included offense of manslaughter. His counsel contended at trial that, "depending on the light that the court looks at my client's testimony, i.e., the testimony when I was questioning him, this was not an intentional act, this was more of a reckless act in that he shot Chuck and continued shooting and several of the shots struck Cathy." The trial court refused to give the manslaughter instruction.

**STANDARD OF REVIEW**

Courts decide whether a defendant is entitled to a lesser-included-offense instruction with a two-part test. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider as a matter of law whether the requested instruction describes a lesser-included offense of the charged offense, then decide whether any evidence in the record would support giving the instruction in the case before us. *Rice v. State*, 333 S.W.3d 140, 144-45 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535-36. An offense is lesser-included of another if it is established by proof of the same or less than all the facts required to establish the offense charged or if it differs from the charged offense only in that a less culpable

2

mental state establishes its commission. *See* Tex. Code Crim. Proc. art. 37.09(1), (3); *see also Rice*, 333 S.W.3d at 144. There is no dispute here that murder and manslaughter are lesser-included offenses of capital murder, so we will focus on whether the evidence at trial supported giving the instructions.

We must determine whether some evidence in the record would have permitted a rational jury to find that, if Parker is guilty, he is guilty only of the lesser-included offense. *See Rice*, 333 S.W.3d at 145. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id*. The trial court must give the instruction regardless of whether the evidence raising the possibility of guilt only of the lesser offense is weak, credible, impeached, or contradicted. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012); *see also Goad*, 354 S.W.3d at 446-47. In *Cavazos*, the defendant undisputedly shot and killed a fellow party guest. 382 S.W.3d at 380. Cavazos was charged with murder and sought a manslaughter instruction, arguing that the intent element of murder was negated by his testimony that he did not mean to shoot anyone. *Id.* at 381. The Texas Court of Criminal Appeals rejected Cavazos's argument that he had raised sufficient evidence to warrant an instruction on the lesser-included offense of manslaughter:

> There was no evidence directly germane to recklessness. Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend "I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots. The evidence here does not support a finding of recklessness and does not rise to level that would convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense.

*Id.* at 385.

3

If we find preserved jury-charge error, we examine the entire record to decide if it caused "some harm" to the defendant. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

**DISCUSSION**

Parker contends that the trial court should have given a lesser-included offense instruction for manslaughter concerning the death of his mother and, with the possibility of him being found guilty only of manslaughter for her death, the trial court should have instructed the jury on murder (non-capital) for the death of Mr. Youngblood.

Within its capital-murder instruction, the trial court instructed the jury to consider only one theory of murder—intentionally or knowingly causing the death of an individual. *See* Tex. Penal Code § 19.02(b)(1). The relevant difference between the offenses of murder as charged and manslaughter is the killer's state of mind—acting with the conscious objective or desire to cause the result (intentionally) or with awareness that conduct is reasonably certain to cause a result (knowingly) supports a murder conviction, while acting with awareness of but conscious disregard for a substantial and unjustifiable risk that death will occur (recklessly) supports a manslaughter charge. *See id.* § 6.03(a) (intentionally), (b) (knowingly), (c) (recklessly); *cf. Cavazos*, 382 S.W.3d at 384 (comparing the state of mind of manslaughter to a different theory of murder).

Parker told different versions of the events and his state of mind when shooting the Youngbloods. In his statement to police, Parker wrote, "I aimed for the back of Chuck's head and fired the gun two times. . . . Chuck fell to the floor. In an instant after shooting Chuck I realized I had to shot [sic] my mom. I fired the gun a third time striking my mom." (Forensic evidence

4

indicated he fired five shots.)  At trial, when asked "did you shoot—intentionally and knowingly shoot your mother to the ground?" Parker responded, "No, sir."  When asked, "did you mean to kill your mother?" he replied, "No, sir."  He indicated that she was hit by bullets he meant for Mr. Youngblood, saying "when I was shooting at Chuck, I don't know if she turned around and the bullet caught her or—."  During cross-examination by the State, Parker responded "Yes, sir" to this statement:  "So you knowingly, knowing the result of your conduct is that people get hurt, went and got a gun and shot it down that hallway and killed Chuck Youngblood."  He also testified "I didn't mean to kill [Mr. Youngblood], but I did."  When asked, "We all agree that you're guilty of capital murder, right?" Parker responded, "Yes, sir."

Parker contends that his testimony that he did not intend to kill his mother was enough evidence—albeit weak or contradicted—to have permitted a rational jury to convict him of manslaughter and not murder.  In his brief, he argues as follows:

> There is then at least a scintilla of evidence that rationally supports an inference that Parker acted recklessly *with regard to his mother* at the moment he fired the shots at Youngblood.  The fact that *her* death may have resulted from Parker's conduct and that conduct reflected a conscious disregard of a substantial and unjustifiable risk that death would occur as a result of his conduct entitled Parker to a charge on the lesser offense as it related to his mother.

(Emphases in original.)[1]

---

[1] Although he mentions in his brief that trial counsel "argued that there was some testimony that Parker did not intend to kill anyone, which rebutted or negated one of the crucial elements of murder," he limits his argument on appeal to the death of Mrs. Youngblood and does not make a similar argument regarding a manslaughter instruction for the death of Mr. Youngblood.

5

Parker has not demonstrated error in the jury charge with respect to his mother's death because he has not shown error in two other instructions. The trial court's murder instruction regarding the death of Mr. Youngblood as part of the capital-murder charge is unchallenged and correct. The *Cavazos* court held that "[p]ulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots." 382 S.W.3d at 385. Here, Parker testified without contradiction that he got a gun, pointed it at Mr. Youngblood from four feet away, pulled the trigger several times, and left the scene, later testifying that he did not mean to kill anyone. Under *Cavazos*, we must conclude that the record does not rationally support an inference that Parker acted at most recklessly when he fired the shots at Mr. Youngblood. *See id.* Parker undisputedly killed his mother as part of the same event. Through the transferred-intent instruction, Parker's intent or knowledge when shooting a bullet at Mr. Youngblood transferred to a finding regarding Parker's responsibility for the death of Mrs. Youngblood caused by such a bullet. *See* Tex. Penal Code § 6.04(b). Because the undisputed evidence showed that at least one bullet Parker fired at Mr. Youngblood killed Mrs. Youngblood, the *Cavazos* theory that the record would not support a mere recklessness finding with respect to Mr. Youngblood's death also means that the record does not support a mere recklessness finding with respect to Mrs. Youngblood's death. *Cf. Aviles v. State*, No. 03-13-00040-CR, 2015 Tex. App. LEXIS 780, at *12 (Tex. App.—Austin Jan. 29, 2015, no pet.) (testimony that a gunman had no animosity toward the"primary" victim's mother and that she just "got in the way" when he was shooting the "primary" victim does not support instructing the jury to consider whether the shooter was merely reckless when he killed the mother). Parker's asserted concern for his mother is no

6

evidence that he acted only recklessly when he killed her. *See id*. at *7-8. With the transferred-intent instruction and this record before them, no rational jury could have found that Parker was only reckless when he killed his mother. Parker has not shown error in failing to give the manslaughter instruction.

Alternatively, the existence of the transferred-intent instruction and the uncontested murder finding regarding the death of Mr. Youngblood mean that Parker cannot show that he suffered any harm from any error in the refusal to give a manslaughter instruction concerning Mrs. Youngblood's death. As part of the capital-murder conviction, the jury necessarily found that Parker knowingly or intentionally caused Mr. Youngblood's death. Parker does not contest that finding, does not urge that the trial court should have given an instruction on an offense less than murder with respect to Mr. Youngblood's death, and does not challenge the provision of the transferred-intent instruction. Based on Parker's undisputed testimony that at least one of the bullets he fired at Mr. Youngblood killed his mother, the unchallenged jury finding that Parker knowingly or intentionally caused Mr. Youngblood's death transfers and is attached to the unchallenged finding that Parker caused Mrs. Youngblood's death, rendering the killing of Mrs. Youngblood a murder and fulfilling the capital-murder requirements. On the record and the complaints presented on appeal, Parker cannot show that any error in the failure to give a manslaughter instruction harmed him.[2]

Because Parker's argument for a separate murder instruction and question with respect to Mr. Youngblood's death is predicated on being entitled to a manslaughter instruction

---

[2] There may be scenarios in other cases under which—despite the *Cavazos* opinion, the existence of a properly provided transferred-intent instruction and an allegation that one defendant caused multiple deaths—a trial court should instruct the jury on lesser-included offenses of murder. No such scenario is before us.

7

concerning his mother's death, that argument fails as well. The trial court did not err by failing to instruct and inquire whether Parker was guilty only of murder with respect to Mr. Youngblood.

**CONCLUSION**

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed: December 2, 2015

Do Not Publish