**AFFIRMED; Opinion Filed February 1, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00102-CR

**MELIK RALAH SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1476321-N**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Stoddart
Opinion by Justice Stoddart

A jury convicted Melik Ralah Smith of murder and the trial court assessed punishment at ninety-nine years' incarceration. In four issues, appellant argues the trial court abused its discretion by excluding evidence about his mental illness and by not charging the jury on a lesser-included offense. We affirm the trial court's judgment.

FACTUAL BACKGROUND

The decedent, Onkuli Morris, was the mother of appellant and Dana Morris.[1] Dana called her mother on the night of Sunday, September 14, 2014, but Onkuli did not answer the phone and did not return the call. The following day, Dana called again, but her mother did not

---

[1] Because Dana Morris and her mother have the same last name, we will refer to them by their first names.

answer or call back. On Tuesday, Dana contacted her mother's friend, Jennifer Smith,[2] and asked her to check on Onkuli. Jennifer went to Onkuli's apartment where appellant also lived. Appellant did not allow Jennifer to enter and told Jennifer that his mother was not at home. On Wednesday morning, September 17, 2014, Dana called the police.

When officers knocked on the apartment door, no one answered. Finding the door unlocked, they went inside. The officers saw blood splattered throughout the apartment. They found a wooden rod with blood and hair on it that, when tested later, matched Onkuli's and appellant's DNA. In the master bathroom, officers found Onkuli's body wrapped in a blanket. When the medical examiner performed the autopsy on September 17, 2014, he noted Onkuli's body was in a stage of decomposition that typically begins approximately twenty-four hours after death.

While collecting evidence in appellant's bedroom, a crime scene detective found appellant hiding in a closet. When appellant did not respond to the officer's instruction to exit the closet, the officer pulled appellant out of the closet and arrested him. Following his arrest, police interrogated appellant. Officers called Dana on the phone, but appellant refused to speak to her, stating he did not have a sister, indicating to Dana that appellant's mental state was not normal. When she went to visit appellant in jail, he refused to see her. Dana saw appellant approximately one week after their mother's death and she thought he was mentally ill.

Dana testified that appellant has suffered mental illness since he was nineteen or twenty years old. He was committed to mental hospitals multiple times and was diagnosed with paranoid schizophrenia and bipolar disorder. When he does not take medication, he hears voices and speaks to those voices. Dana did not believe appellant was taking medication at the time he killed Onkuli. Dana testified about past incidents when appellant acted violently toward Dana

_____

[2] Because Jennifer Smith has the same last name as appellant, we will refer to her by her first name.

and their mother. Each of those incidents occurred when appellant was not taking medication. She testified about the murder: "He knew mama was all he had. So I know that he had to be out of his mind to do that. She loved him with everything, and he knew that. So I know he wasn't in a clear state." She testified she did not believe appellant intended to kill their mother.

In addition to the evidence admitted at trial, the trial judge heard unadmitted evidence outside the presence of the jury. The judge excluded additional testimony from Dana that after appellant was arrested and found incompetent to stand trial, he was sent to Vernon State Hospital as well as a videotape of police interrogating appellant.

The trial court also excluded testimony from three expert witnesses who testified about appellant's mental illness during a hearing outside the presence of the jury. Dr. Michael Pittman originally examined appellant on September 25, 2014, for the purpose of determining whether he was competent to stand trial. Pittman concluded appellant had schizophrenia and was not competent, but could become competent in the future. Dr. Mitchell Dunn examined appellant on November 17, 2015, approximately fifteen months after Onkuli's death, and concluded appellant suffered from schizophrenia. Dunn testified appellant was mentally ill at the time of the incident, but he could not affirmatively state appellant was insane. He also stated a person who is mentally ill can differentiate between right and wrong. Dunn did not know whether, at the time of the offense, appellant intended to cause the death of his mother or did so knowingly or intentionally. The third witness, Dr. Antoinette McGarahan, evaluated appellant on December 11, 2015. She reviewed the police report and believed that appellant hiding in the closet after the incident showed he was experiencing symptoms of mental illness and not functioning normally at the time of the offense. After examining the interrogation video, she concluded that at the time of the interrogation, appellant was mentally ill, psychotic, experiencing delusions and hallucinations, and had lost touch with reality. McGarahan stated that although appellant could

–3–

have been insane at the time of the incident, she was not providing testimony about whether he was insane or whether he intentionally or knowingly caused his mother's death.

## LAW & ANALYSIS

In his first, second, and third issues, appellant argues the trial court abused its discretion by limiting and excluding testimony from Dana and medical experts about appellant's mental illness and by excluding a videotape of officers interrogating him after he was arrested. Citing *Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005), appellant asserts the court of criminal appeals has held that lay and expert testimony is admissible regarding a defendant's mental illness that may bear on his state of mind at the time of the offense. The State responds that appellant's proffered evidence was neither relevant nor admissible and, therefore, the trial court properly excluded it.

We review a trial court's decision to exclude testimony about a defendant's mental condition for an abuse of discretion. *See Jackson*, 160 S.W.3d at 574. The code of criminal procedure provides that in a prosecution for murder, the State or defendant "shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing . . . together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ART. 38.36(a). Evidence of a defendant's history of mental illness may be relevant and admissible. *See Ruffin v. State*, 270 S.W.3d 586, 595 (Tex. Crim. App. 2008) (citing *Jackson*, 160 S.W.3d at 574). However, the evidence may be excluded if it does not meet the admissibility requirements of the rules of evidence, including rule 403. *Jackson*, 160 S.W.3d at 574; TEX. R. EVID. 403 (relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."). Evidence of mental illness "may also be excluded if it does not truly

negate the required *mens rea.*" *Ruffin*, 270 S.W.3d 596; *see also Palmer v. State*, No. 05-14-00671-CR, 2015 WL 6859783, at *3 (Tex. App.—Dallas Nov. 9, 2015, pet. ref'd) (mem. op., not designated for publication).

Appellant asserts he sought to admit the excluded evidence because it shows his state of mind at the time of the offense, which would have rebutted the required mental state for murder. The *mens rea* for murder is intentionally or knowingly. *See* TEX. PENAL CODE § 19.02(b). The excluded evidence shows appellant suffered from mental illness, was found incompetent to stand trial, and was admitted to Vernon State Hospital after his arrest. None of the excluded evidence established appellant's mental condition at the time of the murder. Appellant's experts could not state that appellant did not know right from wrong and did not knowingly or intentionally kill his mother. To the contrary, Dunn and McGarahan, who examined appellant more than one year after the murder, testified that a person who is mentally ill can differentiate between right and wrong, can intend to perform an act, and is capable of understanding the results of his actions. Pittman, who examined appellant approximately one week after Onkuli's death, only testified about appellant's competency to stand trial. While the experts stated appellant could have been insane at the time of the incident, they could not affirmatively testify that he was.

The trial court could have reasonably concluded that none of the excluded evidence was related to appellant's mental state at the time of the murder. Appellant did not raise an insanity defense, nor did the excluded evidence show he was insane. Further, all of the evidence reflected his mental state in the days, weeks, and months after the offense occurred and did not show appellant was unable to form the intent to intentionally or knowingly kill his mother at the time of her death. *See Palmer*, 2015 WL 6859783, at *3 (citing *Mays v. State*, 318 S.W.3d 368, 381–82 (Tex. Crim. App. 2010)). Because the excluded evidence does not negate the *mens rea*

element of murder, we conclude the trial court did not abuse its discretion by excluding it. *See Ruffin*, 270 S.W.3d 596; *Jackson*, 160 S.W.3d at 572; *Palmer*, 2015 WL 6859783, at \*3.

The trial court also could have excluded the evidence under evidentiary rule 403 having concluded the evidence was overly confusing or misleading to the jury. *See* TEX. R. EVID. 403. The excluded evidence was not tied to appellant's actions at the time of the offense and no testimony was offered to explain how evidence of appellant's mental illness in the days, weeks, or months after the murder reflected his ability to form the requisite intent at the time of the murder. Additional facts related to appellant's mental illness, but not related to his ability to form the requisite intent at the time of the murder, could confuse or mislead the jury. *See id.*; *Jackson*, 160 S.W.3d at 574.

We conclude the trial court's rulings excluding the evidence were within the zone of reasonable disagreement. We overrule appellant's first, second, and third issues.

In his fourth issue, appellant argues the trial court erred by refusing to charge the jury on a lesser-included offense, such as manslaughter, that would have required the jury to find appellant acted recklessly.[3] The trial court's decision to submit or deny a lesser included offense instruction is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). We apply a two-pronged test to determine if the trial court should have given a jury charge on a lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). We first determine if the proof necessary to establish the charged offense includes the lesser offense. *Id*. If it does, we then review the evidence to determine that if appellant is guilty, he is guilty only of the lesser offense. *Id*. at 536.

---

[3] The State asserts appellant failed to preserve this issue for appeal. Before the jury was charged, and outside the presence of the jury, the trial judge stated: "I'm not sure we were on the record or not, [defense counsel], but you have no objections to the charge other than the requested charge on lesser included?" Defense counsel replied: "No, Your Honor." We need not determine whether this exchange is sufficient to preserve a jury charge error because, even if it is, we conclude the trial court did not err by refusing to charge the jury on a lesser-included offense.

The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012). This step requires us to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). This evidence must show the lesser included offense is a "valid, rational alternative to the charged offense." *Id.* Moreover, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

Manslaughter can be a lesser-included offense of murder. *See id.* (citing TEX. CODE CRIM. PROC. art. 37.09(3)). A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE § 19.04. To establish recklessness, the State must prove that the person was aware of but consciously disregarded a substantial and unjustifiable risk with respect to either the nature or result of his conduct. TEX. PENAL CODE § 6.03(c). The difference between causing death while consciously disregarding a risk that death will occur and intending to cause serious bodily injury that results in death is that the former requires a lesser culpable mental state. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012).

There is no evidence that appellant's actions were merely reckless and not made knowingly or intentionally. While the record shows that appellant suffers from mental illness and may not have been taking medication, it does not show that he was aware of but consciously disregarded a substantial and unjustifiable risk that his conduct would cause his mother's death. Therefore, there is no evidence that would have supported a charge, such as manslaughter, that

would have required the jury to find appellant acted recklessly. We conclude the trial court did not abuse its discretion by denying the requested instruction for a lesser-included-offense. We overrule appellant's fourth issue.

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
160102F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MELIK RALAH SMITH, Appellant

No. 05-16-00102-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1476321-N.
Opinion delivered by Justice Stoddart.
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of February, 2017.